Filed 4/28/26  In re Madrid CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

---

| | |
|---|---|
| In re JOHN MADRID on Habeas Corpus. | C102152 |
| | (Super. Ct. No. 23HC02430) |

Petitioner John Madrid filed a petition for writ of habeas corpus challenging the Department of Corrections and Rehabilitation's property policy that denies male and transgender female inmates access to personal property that is otherwise allowed to female inmates.  Since Madrid filed the instant petition, the Fifth District Court of Appeal has concluded that the "Department's gender-based property regulations violate the equal protection clause" and ordered the Department to "revise its property regulations to eliminate gender-based discrepancies between general population male inmates and general population female inmates."  (*In re Galzinski* (May 15, 2025, F085635) [nonpub. opn.] (*Galzinski*).)[1]  For the following reasons, we conclude that because the *Galzinski*

---

[1]  California Rules of Court, rule 8.1115 prohibits citation to a California Court of Appeal opinion that was not certified for publication even though the opinion is available through online databases.  (*People v. Williams* (2009) 176 Cal.App.4th 1521, 1529.)  Nevertheless, when it is of substantial consequence to the determination of the action, we may take judicial notice of the decision under Evidence Code sections 452, subdivision (d) and 459, subdivision (c), and we do so here.  The parties agree that we should consider Galzinski, but disagree as to the impact of the decision on the instant case.

1

court found the property policy at issue here unconstitutional and has ordered the elimination of gender-based differences in allowable personal property in the general population, the issues before us are moot.

LEGAL AND FACTUAL BACKGROUND

Madrid filed the instant petition in October 2024, alleging that the Department of Corrections and Rehabilitation (Department) "has, and is continuing to, deny petitioner and others similarly situated to purchase items of consumer goods that are allowed to other prisoners of the same sex identified as transgender or opposite biological sex." Madrid identified nine items with a spectrum of ownership possibilities pursuant to the Department's gender-based policy. To summarize, property ownership by male inmates was the most limited, transgender inmates living in a male facility were allowed to own more items than male inmates but fewer than female inmates living in a female facility, and female inmates in a female facility were allowed to own the largest variety of items. In the petition, Madrid did not self-identify as transgender, although such self-identification was referenced by the superior court that denied what appears to be a similar challenge via a separate habeas corpus petition.

This court requested an informal response to the petition from the Department. On behalf of the Department, the Attorney General responded that "[w]hile most property items are available on equal terms to male and female inmates, the limited gender-based distinctions reflected in the property regulations are related to the state's compelling interest in prison safety and security." The Attorney General attached statistical data to support its claim that "male inmates on balance are significantly more likely than female inmates to engage in acts of violence, use weapons, belong to gangs, or seek to escape," and that "[m]ost of the gender-based distinctions at issue are directly related to these security concerns."

This court then issued an order to show cause and noted that a related question was pending in the Fifth District Court of Appeal in *Galzinski, supra*, F085635.

In May 2025, the appellate court issued its opinion in *Galzinski*, concluding that the Department's gender-based property policy violated equal protection and ordered the Department to revise its property regulations to eliminate gender-based discrepancies between general population male and female inmates. In doing so, it concluded that the Department's compelling interest in maintaining prison safety and security does not justify its gender-based property classification. The court found that the statistical data submitted by the Department to support its claim that the male inmate population is, on balance, more violent than the female inmate population was facially incomplete and was not fully supportive of the Department's position.[2] The court ultimately concluded that since "the data fails to show that general population male inmates are significantly more violent and likely to escape than general population female inmates, … there is no legitimate basis to grant more property to one gender over another." (*Galzinski, supra*, F085635.) The court went on to conclude that even if the gender classification was necessary to further the state's compelling interest in safety and security, the "Department cannot show that the means chosen to address the interest is the least restrictive means available." (*Galzinski, supra*, F085635.) In ordering the Department to revise the policy to eliminate gender-based classification, the court noted that the Department already has a system and structure in place that would allow property ownership in an equal manner according to an inmate's privilege group; the Department "must determine which specific items of property both male and female inmates in general population will be allowed to possess equally while still maintaining institutional safety and security." (*Galzinski, supra*, F085635.)

In this case, the Attorney General filed a return in July 2025, arguing that the *Galzinski* opinion rendered moot Madrid's challenge to the property policy as applied to

---

[2] As referenced *ante*, the Department appears to have put forward a similar, if not the same, argument here in its informal response.

male inmates. The Attorney General further alleged that Madrid lacked standing to challenge the Department's property policy on behalf of transgender female inmates because Madrid identified as a male, not as a transgender female. Five months later, however, the Attorney General filed a supplemental letter brief explaining that at the time the return was filed, Madrid's most recent gender identity questionnaire (dated April 22, 2025) indicated Madrid identified as a male and, accordingly, the Attorney General referred to Madrid by "he/him/his." The Attorney General acknowledged that Madrid completed a new gender identity questionnaire on August 13, 2025, and self-identified as a transgender female with preferred pronouns of "she/her/hers." The Attorney General acknowledged that Madrid was transferred to a transgender hub at a male institution and thus does not lack standing to challenge property regulations applicable to transgender female inmates.

In her traverse, Madrid contends that "only actual and full compliance" with the ruling in *Galzinski* would render her claim of unconstitutional limitation of property allowances for male and transgender female inmates moot, which has not yet been achieved. She also contends that because the Attorney General has conceded Madrid has standing to challenge the property policy applied to transgender female inmates, which was the only basis for opposition, Madrid is entitled to relief. Finally, Madrid objects to the Attorney General's refusal to file an amended return which, according to Madrid, resulted in "[i]ntentional and open misgendering of a transgender person."[3]

DISCUSSION

With respect to the property rights of inmates, we note there are potentially three gender-based comparisons that could be made from Madrid's challenge: the rights of

---

[3]     While we are sensitive to the pain that intentional misgendering may cause, we do not agree that the record before us conclusively establishes intentional misgendering on the part of the Attorney General.

4

male inmates (at male facilities) versus female inmates (at female facilities); the rights of male inmates (at male facilities) versus transgender female inmates (at male facilities); and the rights of transgender female inmates (at male facilities) versus female inmates (at female facilities). As a member of the transgender female community at a male institution, Madrid is generally entitled to greater property rights than male inmates. As a result, we need only address the first and last of the above comparisons as those are the only comparisons where Madrid's property rights suffer under the gender-based property policy.

## I.  Property Rights of Male versus Female Inmates

Comparing the property rights of male inmates (at male facilities) to those of female inmates (at female facilities), it is undisputed that female inmates are permitted to own a greater range of property than males. But there are two procedural hurdles to the resolution of Madrid's claim that the property policy as applied to male inmates violates equal protection. First, Madrid's self-identification as a transgender female and placement in a transgender housing hub renders the male-based property policy inapplicable to her.

"To have standing, a party must be beneficially interested in the controversy; that is, he or she must have 'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' [Citation.] The party must be able to demonstrate that he or she has some such beneficial interest that is concrete and actual, and not conjectural or hypothetical. A complaining party's demonstration that the subject of a particular challenge has the effect of infringing some constitutional or statutory right may qualify as a legitimate claim of beneficial interest sufficient to confer standing on that party." (*Holmes v. California Nat. Guard* (2001) 90 Cal.App.4th 297, 315.) " '[C]ontentions based on a lack of standing involve jurisdictional challenges and may be raised at any time in the proceeding' " and a plaintiff or petitioner has the burden to establish standing. (*Taking Offense v. State of*

5

*California* (2025) 18 Cal.5th 891, 910.) Standing " 'must exist at all times until judgment is entered and not just on the date the complaint is filed.' " (*Id*. at p. 920.)

While the parties address Madrid's standing as to her claim regarding the property policy as applied to transgender female inmates — and both agree she has standing to raise that claim — neither party addresses whether and how she may also have standing to challenge the property policy as applied to male inmates. Madrid insists that referring to her with traditional male pronouns is misgendering her; she disavows any identification as a male. (See Civ. Code, § 51, subd. (e)(6) [" 'Gender' means sex, and includes a person's gender identity and gender expression"].) And, because Madrid is now housed at a transgender hub, she would no longer be subject to the restrictive property policy applicable to male inmates in the general population. This begs the question whether Madrid has standing to challenging this aspect of the property policy, however we need not reach that issue given our conclusions, *post*.

A second intervening event precludes review. We agree with the Department that because the court in *Galzinski* already found the gender-based property policy unconstitutional and ordered the Department to revise it and eliminate gender-based classifications, this court cannot effectively grant any additional relief to Madrid.

As a general rule, it is a court's duty to decide " ' "actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.) When an event occurs that renders it impossible for the court to grant effective relief, the court will dismiss an appeal. (*Ibid*.)

"It is true that under some circumstances the repeal of a statute during the pendency of a cause on appeal will render further consideration thereof moot [citations]." (*Montalvo v. Madera Unified Sch. Dist. Bd. of Education* (1971) 21 Cal.App.3d 323, 329; see also *Stoneham v. Rushen* (1982) 137 Cal.App.3d 729, 734; *Vincent v. State of*

*California* (1971) 22 Cal.App.3d 566, 570, 571, fn. 6.) We conclude those principles apply to the property policy at issue here.

Madrid acknowledges the Department has been ordered to revise the gender-based property policy and "trust[s] that [the Department] will make a good-faith effort to comply with the *Galzinski* mandate." Nevertheless, she contends that only full compliance with that mandate would render this claim moot. We disagree. The policy that distinguishes property ownership on the basis of gender has already been declared to be in violation of equal protection and "may not be employed." (*Galzinski, supra*, F085635.) As Madrid has challenged the constitutionality of the policy, we could not grant additional effective relief even if we were to decide the merits of her claim in her favor. (See *In re D.P.* (2023) 14 Cal.5th 266, 277 ["to show a need for effective relief, the plaintiff must first demonstrate that he or she has suffered from a change in legal status"].) Although Madrid urges us to stay the petition pending final resolution of any new regulations promulgated by the Department, she has provided no concrete reason for us to do so and we decline the request.

## II.  *Property Policy as to Transgender Female Inmates*

In comparing the rights of transgender female inmates (at male facilities) versus female inmates (at female facilities), Madrid alleges the property policy "violates the rights of transgender females by denying them (transgenders) access to those same or comparable items without a showing of any compelling government interests or objectives," and because it "prohibits certain items of property based upon 'Institutional Placement' (Male/Female Facilities)" the policy violates equal protection. Thus, Madrid alleges that the difference in property rights between transgender female and female inmates is based on whether the inmate resides in a male or female facility. As this is a distinction based on gender-designated facilities, the natural question is whether *Galzinski* has already addressed this issue.

The Department limited its response to address the question of standing, initially putting forth then withdrawing the argument that Madrid lacked standing to challenge the property policy as applied to transgender female inmates. In her traverse, Madrid's counsel insists that the Department's failure to make "factual allegations to oppose the merits of the transgender-based portion of the petition" means there is no factual dispute and the transgender-based portion of the petition should be automatically granted and that we should "rule that transgender female-identified inmates have the same property possession rights as cisgender female inmates."

In habeas corpus cases, "a court must first determine whether the petition states a prima facie case for relief — that is, whether it states facts that, if true, entitle the petitioner to relief." (*People v. Romero* (1994) 8 Cal.4th 728, 737; see also Cal Rules of Court, rule 4.551(c)(1).) If the court finds the factual allegations, taken as true, establish a prima facie case for relief, the court will issue an order to show cause. (*In re Figueroa* (2018) 4 Cal.5th 576, 587.) The Penal Code then contemplates the custodian of the confined person shall file a responsive pleading, called a return, justifying the alleged illegality. (Pen. Code, § 1480.) At this early stage, the respondent's burden is one of pleading, not proof. (*People v. Duvall* (1995) 9 Cal.4th 464, 483.) "It is the interplay between the return and the petitioner's response to the return in a pleading called the traverse, that frames the issues the court must decide in order to resolve the case." (*In re Serrano* (1995) 10 Cal.4th 447, 455.)

It is important to note that our issuance of an order to show cause "does not … establish a prima facie determination that petitioner is entitled to the relief requested. Rather, it signifies our 'preliminary determination that the petitioner has made a prima facie statement of specific facts which, if established, entitle [petitioner] to habeas corpus relief under existing law.' [Citations.]" (*In re Serrano, supra*, 10 Cal.4th at p. 455, italics omitted; see *People v. Duvall, supra*, 9 Cal.4th at p. 475.) "It is not, however, the equivalent of a final appellate decision on questions of law, nor does it constitute law of

8

the case." (*In re Orosco* (1978) 82 Cal.App.3d 924, 927.) Accordingly, it does not preclude us from reexamining any determination made or conclusion previously reached. (See, e.g., *In re Sassounian* (1995) 9 Cal.4th 535, 547.) Indeed, a petitioner bears a heavy burden initially to *plead* sufficient grounds for relief, and then later to *prove* them. (*Duvall*, at p. 474.)

Here, the Department admitted the property policy was set forth in the Department's regulations and was governed by a standard property schedule applicable to different groups of inmates including male inmates in the general population, female inmates, and transgender inmates and that Madrid is a transgender female inmate at a male facility. Thus, there is no factual dispute regarding the property policy as applicable to Madrid.

But the lack of factual dispute does not settle the issue. The legal question remains as to whether the property policy as applied to transgender female inmates violates equal protection. Both parties have issued general denials: the Department alleges that Madrid fails to establish grounds for habeas relief and Madrid disagrees. That is the extent of their analysis. Neither party has addressed the legality of the property policy for transgender inmates when compared to the policy for female inmates. Nor has either party addressed whether the reasoning in *Galzinski* applies to the instant comparison of transgender female inmates at a male facility to female inmates at a female facility.

We conclude the elimination of the gender-based property policy by the *Galzinski* court renders moot Madrid's challenge. Not only does this mean the gender-based classifications in ownership may no longer be used, but the decision to order the

9

Department to revise its policy was based on a similar argument to that initially raised in this case in the Department's informal response.[4] (See *Galzinski, supra*, F085635.)

The Department initially contended that it "designed property policies for sex-segregated men's and women's prisons based on evidence concerning the collective propensity for violence and other conduct among male and female inmates." It claimed that it must not only consider the individual inmate's propensity for violence but "also the propensity of other inmates housed in close proximity." Based on data collected by CDCR that purportedly showed that male inmates were significantly more likely than their female counterparts to commit batteries and homicides, possess or manufacture deadly weapons or explosive devices, and attempt to escape prison, inmates housed at male-designated institutions are subject to more restrictive property regulations than those housed at female-designated institutions. The Department also contended that it "has also evaluated personal property items that could be safely allowed to transgender offenders housed at male institutions without posing a significant threat to institutional safety." The Department specifically contended that the items identified by Madrid "could cause disruption or serious safety concerns if allowed into a male-designated institution." And, the Department continued, "it is virtually impossible to prevent male inmates housed in close proximity to Madrid from gaining access to these items." In essence, the Department's initial position was that because male inmates are more dangerous than female inmates, the property policy is justifiably more restrictive to inmates residing in a male-designated facility — including transgender female inmates residing in male-designated facilities.

Although *Galzinski* did not specifically address the applicability of the equal protection claim to a transgender inmate's ability to own property, the court rejected the

---

[4]     Although it is the return and the traverse "that frames the issues the court must decide in order to resolve the case" (*In re Serrano, supra*, 10 Cal.4th at p. 455), the Department's informal response informs of its general argument in support of the policy.

Department's argument that gender-based classification of property ownership was justified based on whether an inmate resided in a male-designated facility. Specifically, the court concluded that the Department's reliance on the aggregate data purportedly showing that male inmates are more dangerous than female inmates did not withstand strict scrutiny analysis and did not necessarily show that general population male inmates are significantly more violent than female inmates. (*Galzinski, supra*, F085635.) Accordingly, the court concluded, the Department failed to demonstrate its gender-based classification was related to prison safety. Finally, the court determined that the property policy was not related to the asserted compelling state interest of rehabilitation and was not narrowly tailored to achieve that goal.

Because *Galzinski* considered a comparison of property ownership afforded to each gender-designated facility (i.e., male and female facilities) to conclude that the Department's gender-based property policy was unconstitutional, this necessarily impacts any property policy as applied to transgender female inmates in male-designated facilities. The remedy also equally applies: the gender-based classification policy may not be used. Thus, Madrid's claim is moot. To the extent there exist other methods of challenging the property policy as applied to transgender inmates, the abandonment of the legal argument addressing the claim by both parties forecloses our review. " ' "Issues do not have a life of their own: if they are not raised or supported by [substantive] argument or citation to authority, we consider the issues waived." ' " (*Upshaw v. Superior Court* (2018) 22 Cal.App.5th 489, 504, fn. 7; see also *In re Jenkins* (2023) 14 Cal.5th 493, 504, fn. 5 [declining to address contention made in a summary fashion without developing the legal argument].)

11

DISPOSITION

The petition for writ of habeas corpus is dismissed as moot.


/s/ _____
EARL, P. J.

We concur:


/s/ _____
DUARTE, J.


/s/ _____
WISEMAN, J.*

_____

*     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12